**CONTINUATION IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Trisha M.A. Kovac, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation since February 1, 2009, and am currently assigned to the Detroit Division, Saint Joseph Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography, and regularly assist in the prosecution of these types of cases. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including coercion and enticement and traveler offenses. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. My duties include the investigation of alleged violations of federal criminal laws, including matters involving violations of 18 U.S.C. §§ 2251 and 2252A (which make it illegal to produce, distribute, and possess child pornography in interstate commerce) and of 18 U.S.C. § 2423 (which makes it illegal to travel in interstate commerce with the intent to engage in illicit sexual activity).

2. Pursuant to the provisions of 18 U.S.C. § 2256(8), "child pornography" means a visual depiction, the production of which involves the use of a minor engaging in sexually explicit conduct, including but not limited to various simulated or actual sex acts, or the lascivious exhibition of the genitals or the pubic area.

3. I make this I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the historic location of the cellular telephone assigned call number (224) 406-4664 (the **"Subject Phone"**), whose service provider is Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road in Bedminster, NJ. The **Subject Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251 and 2252A (which make it illegal to produce, distribute, and possess child pornography in interstate commerce) and of 18 U.S.C. § 2423 (which makes it illegal to travel in interstate commerce with the intent to engage in illicit sexual activity) have been committed by EDUARDO G. TORRES. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

### FACTUAL BACKGROUND OF INVESTIGATION

6. On or around April 14, 2023, 11:30 a.m., a woman herein referred to as W.J. contacted the Berrien Springs Oronoko Township Police Department to report that her 12-year-old daughter, herein referred to as J.R., had left the house after W.J. went to work at 5:00 a.m. According to information obtained by J.R.'s sister from J.R.'s Snapchat account, J.R. went to meet a male in his twenties known only as "Jessy" to have sex in the woods for drugs. At the

time she went missing, J.R. was wearing a purple hoodie with neon-colored graphics of a skeleton hand holding a rose, and grey shorts.

7. Afterward, J.R.'s sister found a video in J.R.'s Snapchat account, which is an account with username noregrets-cea1, that showed her having sex with a Hispanic male in the woods. The video had been sent to J.R.'s Snapchat account from account jessy225827[1] that morning and was shot from the perspective of the male subject. The video at first appeared to be in the "portrait" mode, and a male's face can be seen clearly. The camera view then flips, and a close-up of intercourse of a penis penetrating a vagina is visible. A female can be seen having her hair pulled while she is in the all-fours position from the male vantage point taking the video. J.R.'s sister identified the female as J.R. based upon her physical appearance and the shirt she was wearing in the video. A screen capture from the video showed the below subject:

---

[1] A preservation request was submitted to Snapchat for noregrets-cea1 and jessy225827 on April 18, 2023 and April 15, 2023, respectively.



8.      FBI was notified shortly after 4:00 pm that same day that J.R. was missing, and initiated a number of emergency disclosure requests to track her location and identify the subject. An emergency disclosure request submitted to Snapchat for jessy225827 returned Google email account mtorres.12349@gmail.com and IP logs returning to Verizon Wireless.[2]  A search in Accurint[3] for mtorres.12349@gmail.com returned a match for an individual identified as EDUARDO G. TORRES, DOB xx/xx/1997,[4] residential address in Waukegan, IL.  An emergency disclosure request submitted to Google, LLC for mtorres.12349@gmail.com requesting all

---

[2] Snapchat is a visual social media messaging application operated by Snap Inc., a company located in Santa Monica, California.

[3] Accurint is a public record database that law enforcement routinely uses in investigations.

[4] The full date of birth is known to me, but I have not included it to protect personal identifying information.

account information, including subscriber and location information, provided location data that indicated that the account had traveled from outside Chicago, Illinois to Berrien Springs, Michigan from 1 a.m. to 4 a.m., spent time in the vicinity of J.R.'s address, then traveled towards Benton Harbor, MI, leaving at approximately 4:00 p.m. eastern time to return to Chicago.  The timing of the Google location data shows that the subject was in the vicinity of either Berrien Springs or Eau Claire, Michigan at the time Snapchat user jessy225827 sent the video of sexual intercourse to J.R.'s Snapchat account.

9. Google returned the following subscriber information for mtorres.12349@gmail.com:

>  Eddie Torres
>  Waukegan, IL
>  224-406-4664

The street address in Waukegan provided by Google matched the street address in Accurint, and the same phone number was also linked to TORRES in Accurint and is the **Subject Phone**.

10. The location history of the Google account was plotted onto maps by an FBI Special Agent from the Cellular Analysis Survey Team (CAST), which provided TORRES's travel history, as shown below:

5

Mtorres.12349@gmail.com
Google Location History
4/14/2023  1:00 AM to 3:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  3:00 AM to 4:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  4:00 AM to 8:00 AM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  8:00 AM to 12:00 PM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  12:00 PM to 4:00 PM



Mtorres.12349@gmail.com
Google Location History
4/14/2023  4:00 PM to 6:49 PM



8

11.     The FBI submitted an exigent request to Verizon for subscriber information for the **Subject Phone** at cellular account number 224-406-4464.  This number was associated with EDUARDO G. TORRES both in Accurint and from the Google account information listing the subscriber as Maria Torres at the same address in Waukegan, IL.  According to the Chicago Department of Motor Vehicles, Maria Torres's DOB is xx/xx/1969.[5]  Law enforcement contacted Maria Torres at the Waukegan address and confirmed that she is TORRES's mother.  Location information provided by Verizon for cellular account number 224-406-4464 also showed the same path of travel as the Google account data showed.  A combined image of the Verizon and Google data shows both the Google account and the Verizon account located within the vicinity of J.R.'s residence between 4:00 a.m. and 6:00 a.m. on April 14, 2023:



---

[5] The full date of birth is known to me, but I have not included it to protect personal identifying information.

12.     As of 6:49 p.m. on April 14, 2023, the Google account gave the following location within the city of Waukegan, IL:



13.     An Illinois driver's license for EDUARDO G. TORRES shows an individual of similar appearance to the male from the video:

10



14.     From the late hours of April 14, 2023, to the early morning hours of April 15, 2023, the **Subject Phone** at cellular number 224-406-4464 continued to ping within the vicinity of the known Waukegan, IL address for EDUARDO G. TORRES. In the early morning hours of April 15, 2023, Agents approached the residence and observed individuals outside of the residence who identified themselves as family members of TORRES. TORRES and J.R. were seated in a vehicle in the driveway.

15.     Upon making contact with TORRES, Agents called the **Subject Phone** at 224-406-4464, and heard the phone ring in TORRES's pocket, which he picked up. Agents seized the device, which was a Google Pixel 2 phone. Google Pixel phones are not manufactured in Michigan. Agents read TORRES his *Miranda* rights and interviewed him. TORRES admitted that he was communicating with J.R. on Snapchat with the purpose of driving to Michigan to see her to engage in sexual intercourse. He stated that he had not met her in person prior to April 14, 2023. TORRES admitted that he traveled to Michigan to pick up J.R. and that he had sexual

intercourse with J.R. twice, including once in the woods near J.R.'s residence in Berrien Springs, Michigan. TORRES stated that he waited until J.R.'s mother left for work to pick up J.R. After TORRES and J.R. had sexual intercourse, he admitted that he drove her across state lines to his home in Waukegan, Illinois.

16. Additionally, TORRES admitted to producing three videos of himself and J.R. having sexual intercourse and that he sent those videos to J.R.'s Snapchat account. A portion of one of the videos has been recovered by law enforcement after J.R.'s sister located the video (described above) on J.R.'s Snapchat account. TORRES admitted that he believed that J.R. was 13 years old. TORRES admitted that he had a laptop at his residence on which he had viewed child sexual abusive materials in the past. Agents also seized the computer. TORRES further admitted to talking to others who he believed were minors on Snapchat and stated that J.R. was the first he had met in person. Based on the location data evidence, the Snapchat video evidence, and TORRES's statements, including that the first time he met J.R. in person was on April 14, 2023, the video of sexual intercourse was produced in Berrien County in the Southern Division of the Western District of Michigan when he had sex with J.R. in the woods near her residence. TORRES was subsequently arrested.

17. On April 15, 2023, the government filed a criminal complaint against TORRES for violations of 18 U.S.C. §§ 2251(a) (production of child pornography); 2252A(a)(5)(B) (possession of child pornography); 2423(a) (transportation of a minor); and 2423(b) (travel with intent to engage in illicit sexual activity). (1:23-mj-00162-RSK PageID.2).

**BACKGROUND RELATING TO VERIZON AND RELEVANT TECHNOLOGY**

18. In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular

12

telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

19. Based on my training and experience, I know that Verizon can collect cell-site data about the **Subject Phone**. I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. I have confirmed with the provider that it currently possesses the information, particularly cell-site information, identified in Attachment B.I during the exigent circumstances request process, as described herein.

20. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

21.     Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Subject Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

## **CONCLUSION**

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.  The data requested in Attachments A and B will assist investigators by tracking the geolocation information associated with the **Subject Phone** in the time immediately before, during, and after the events described herein.

23.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

24.     I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or

control.  Because the warrant will be served on Verizon who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.